**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRENDA JO LOCKHART, ) | |
| ) | CASE NO. 5:14-cv-00852 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Brenda Jo Lockhart ("Lockhart") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On February 8, 2011, Lockhart filed an application for POD and DIB alleging a disability onset date of November 15, 2010. (Tr. 21.) Her application was denied both initially and upon reconsideration. Lockhart timely requested an administrative hearing.

On November 13, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Lockhart, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 21.) On December 20, 2012, the ALJ found Lockhart was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 31-32.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-three (53) at the time of her administrative hearing, Lockhart is a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(d). (Tr. 31.) She has a high school education and past relevant work as an office manager, clerk receptionist, and file clerk. *Id*.

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Lockhart was insured on her alleged disability onset date, November 15, 2010 and remained insured through the date of the ALJ's decision, December 20, 2013. (Tr. 21.) Therefore, in order to be entitled to POD and DIB, Lockhart must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Lockhart established medically determinable, severe impairments, due to "obesity, fibromyalgia/myalgia and myositis, unspecified/polyarthralgia, carpal tunnel syndrome, anxiety, obstructive sleep apnea, arthritis/general osteoarthrosis, mood disorder, depressive disorder, major depressive disorder, recurrent, moderate (without psychotic symptoms), attention deficit hyperactivity disorder, combined type, anxiety disorder, panic disorder-without agoraphobia (dx'd anxiety state, unspecified and panic disorder without agoraphobia 16F), and mild degenerative disease from T12 through L2(9F, 18)." (Tr. 23.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 24.) Lockhart was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.

---

disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

(Tr. 25, 31.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Lockhart was not disabled. (Tr. 31-32.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Psychiatrist*

In her first assignment of error, Lockhart argues that the ALJ did not properly weigh the opinions of her treating psychiatrist, Karen Jacobs, D.O., and, furthermore, failed to provide good reasons for discounting her opinions. (ECF No. 14 at 15-19.) The Commissioner does not

appear to contest that Dr. Jacobs was a treating source, acknowledging that she saw Lockhart every three months between December of 2009 through July of 2011. (ECF No. 17 at 15.) Nonetheless, the Commissioner maintains that the ALJ reasonably ascribed Dr. Jacobs's opinions little weight because they were unsupported by objective medical evidence or her own professional observations. *Id*. at 16-18.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

    Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the

determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On October 10, 2011, Dr. Jacobs completed a medical source statement concerning Lockhart's mental capacity. (Tr. 401-402.) In a corresponding letter written the same date, Dr. Jacobs expanded on the various categories identified in the form. (Tr. 403-405.) In material part, Dr. Jacobs opined that Lockhart had poor ability to maintain attention and concentration for extended periods of two hour segments.[3] (Tr. 401.) Dr. Jacobs stated that "[c]oncentration has been a longstanding issue for Brenda. She notes she is easily distracted, has too many thoughts, and is forgetful. Becomes overwhelmed with too much information. Medications have been attempted for attentional issues with little improvement." (Tr. 403.) She also assessed Lockhart as having poor ability to work in coordination with or proximity to others without being unduly distracted or distracting. (Tr. 401.) Dr. Jacobs explained that "[o]ften Brenda's mind would wander, and she would randomly interrupt a coworker with unrelated thoughts/comments." (Tr. 404.) Lockhart was further assessed as having poor ability to deal with work stresses. (Tr. 401.) Again, Dr. Jacobs explained that "Brenda felt the stress at work was overwhelming resulting in her becoming very emotional – crying, getting shaky, experiencing panic attacks and 'feeling out

---

[3] The Court foregoes discussing areas where Lockhart was ascribed fair or greater abilities.

8

of control.'" (Tr. 404.) In the category of intellectual functioning, Dr. Jacobs found Lockhart had poor ability in all three areas and had problems understanding, remembering and carrying out complex, detailed, or even simple job instructions. (Tr. 402.) Dr. Jacobs stated that "Brenda could not differentiate between these three categories because no matter what she was instructed to do, she felt as soon as she walked away to carry the task out, she would forget. Recognizes she tried many of the employees' patience with her constant need to be re-instructed." (Tr. 404.)

On September 20, 2012, Dr. Jacobs signed a letter that mirrored the limitations set forth in the one dated October 10, 2011. (Tr. 549-551.) According to the Commissioner, the record is bereft of any treatment by Dr. Jacobs after July of 2011. (ECF No. 17 at 15.) Lockhart did not file a reply disputing this contention.

The decision contains the following discussion concerning the treatment and opinions rendered by Dr. Jacobs:

> While receiving psychological treatment at the Cleveland Clinic, despite financial and family stressors, the claimant retained the ability to function outside and within her home. While she had difficulty working in a setting accommodative of her impairments, her ability to engage in work related activity was not compromised to the degree asserted. On August 31, 2010, Karen Jacobs, D.O., noted that the claimant was frustrated because she would not be hired into a permanent position after working 19 months through a temporary agency. However, the claimant desired to work in a less demanding job as a receptionist (Ex. 1F, 17). During a subsequent office visit on November 29, 2010, the claimant related that she had panic attacks when she worked at the call center but after changing jobs she did not have panic attacks for two weeks. She expressed that she wanted to move into a new home but had difficulty with her mother, who had advancing dementia, and was moving into the home as well. Nevertheless, the claimant reported that she put her Christmas tree up and attended the Trans-Siberian Orchestra. Mental status examination showed her mood was fairly good and affect appropriate. She was not suicidal or homicidal and Dr. Jacobs assigned a GAF of 60, noting moderate symptoms (Ex. 1F, 21-23). When the claimant returned on January 28, 2011, she reported return of her panic attacks after moving into her mother's apartment while waiting for financing of a home;

9

however, she was able to manage multiple stressors and remained appropriate on mental status examination (Ex. 1F, 26-28).

Dr. Jacobs noted that the claimant's mood was good on May 13, 2011, but the claimant reported mood changes as well as working 8-14 hours per week. She related that she hurt physically at the end of four hours. Although complaining of panic attacks 4-5 times per week, she no longer had 2-3 attacks in a day and despite reporting an attack in the grocery store lasting 2-3 hours the day prior she was able to finish shopping. The claimant continued to express difficulty living with her mother and Dr. Jacobs assigned a GAF of 48 noting serious symptoms (Ex. 5F, 10-12). However, the level of her GAF increased during an office visit on July 12, 2011, at which time she related going to Amish country and enjoying herself at the Christmas store. In addition, her panic attacks diminished to 2-3 times since she was last seen. Although still having difficulty with her living arrangement, the claimant reported hosting a surprise party for her mother on July 3$^{rd.}$ (Ex. 5F, 15-16). Thus, Dr. Jacobs assigned a GAF of 51-52 noting moderate symptoms (Ex. 5F, 17).

Despite the claimant's described enjoyment in Amish country, as well as hosting a surprise party, Dr. Jacobs completed a medical source statement on October 10, 2011 regarding the claimant's mental capacity in which she opined the claimant's ability to function is significantly limited in maintaining attention and concentration for extended periods of 2 hour segments, work in coordination with or in proximity to others without being unduly distracted or distracting, and dealing with work stresses. She opined that the claimant's ability to function is significantly limited in understanding, remembering and carrying out complex, detailed as well as noncomplex and simple job instructions (Ex. 10F).

In addition Dr. Jacobs further defined the limitations in the medical source statement in a typed format noting the claimant had a longstanding issue with concentration. However, her opined limitations are more subjective in nature than objective. Specifically, she wrote, "She notes she is easily distracted, has too many thoughts and is forgetful." Thus, indicative of the claimant's report; rather than observations made by Dr. Jacobs. She noted that the claimant could not recall where stock was to be relocated; she loses her patience dealing with the public and felt inferior to the rest of the staff (Ex. 11F). Although Dr. Jacobs assigned the greatest degree of compromise, noting her ability to function as "significantly" limited; Dr. Jacob's rationale supporting her opinion is based on the claimant's statements, which reflect work outside the parameters of the residual functional capacity.

Dr. Jacobs completed a subsequent medical source statement on September 20, 2012, resonant of the claimant's statements and repetitive of her prior medical

10

>    source statement. She noted the claimant had no problem in maintaining regular attendance, but referenced the claimant panicking when she could not recall where stock was to be moved, as noted previously. She indicated the claimant felt inferior to coworkers and became inpatient [sic] with customers, which was also noted above (Ex. 23F), but is not indicative of significant limitation.

(Tr. 27-28.)

Though the decision contains a relatively thorough discussion of Dr. Jacobs's treatment of Lockhart, the ALJ effectively only gave one reason for assigning Dr. Jacobs's opinions little weight.[4] The ALJ observed that the medical source statements reflect the claimant's statements rather than observed behaviors. (Tr. 28, 31.) The Court shares the ALJ's concerns that Dr. Jacobs's opinions appear to be, in large part, based on Lockhart's self reports. This Court has previously observed that "Courts have held that '[w]hen a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion." *Williams v. Colvin*, 2014 U.S. Dist. LEXIS 49782 at *48 (N.D. Ohio Mar. 19, 2014) (*quoting Webb v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 4264, 2014 WL 129237 at * 6 (E.D. Tenn. Jan. 14, 2014) (*citing Vorholt v. Comm'r of Soc. Sec.*, 409 Fed App'x 883, 889 (6th Cir. 2011)); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (affirming ALJ's rejection of treating physician opinions where "[t]hese doctors formed their opinions solely from Smith's reporting of her symptoms and her conditions and the ALJ

---

[4] Lockhart, however, is correct that the ALJ did not discuss her treatment and medications in significant detail (ECF No. 14 at 17), though the Commissioner is also correct in asserting that an ALJ is not required to discuss every piece of evidence. (ECF No. 17 at 18.) As the Sixth Circuit has noted, "'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 2006 WL 305648 at * 10 (6th Cir. 2006) (*quoting Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)); *see also Smith v. Astrue*, 2012 U.S. Dist. LEXIS 51364, 2012 WL 1232272 at * 7 (N.D. Ohio April 12, 2012).

11

found that Smith was not credible"); *Stevenson v. Astrue*, 2010 U.S. Dist. LEXIS 78475, 2010 WL 3034018 at * 8 (M.D. Tenn. Aug. 3, 2010) (finding that a medical opinion "based on [an] incredible self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence").

However, this Court's report and recommendation in *Williams* preceded the Sixth Circuit's decision in *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. App'x. 515 (6th Cir. 2014) by several months.  In *Keeton*, the Sixth Circuit was confronted with an ALJ's rejection of an examining psychologist's (Dr. Papadakis) opinion because it was based upon "an unquestioning acceptance of claimant's subjective complaints" and that "the doctor's opinion is unsupported by other evidence, especially treatment records from the claimant's therapist." *Id*. at 525.  The Sixth Circuit found as follows:

> First, the ALJ's claim that Papadakis' opinion and assignment of a GAF of 46 were based solely on an unquestioning acceptance of Plaintiff's subjective complaints is inaccurate and not supported by evidence in the record.  As the notes from Papadakis' examination demonstrate, his opinion was only based in part on Plaintiff's own self-reporting regarding his conditions.  In addition to those reports, Papadakis recorded notes regarding his own observations of Plaintiff's physical symptoms and behavior.  Papadakis observed that Plaintiff had difficulty walking, was sloppily dressed, and was quite tearful during the appointment, especially when discussing a friend killed in Vietnam.  Papadakis observed that Plaintiff was anxious, "demonstrated above average levels of psychomotor agitation . . . was hypervigilant, suspicious, [and] looked around the room." A.R. 238.
>
> ***Even if Papadakis had based his medical opinion solely on Plaintiff's own reports of hallucinations, nightmares, flashbacks, isolation, and psychological numbness, that likely would not have provided a sufficient basis for the ALJ's rejection of his medical opinion***.  This Court has acknowledged the difficulty inherent in proving psychological disabilities as follows:
>
>> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the

12

> diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices . . . in order to obtain objective clinical manifestations of medical illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.
>
> *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74, 260 U.S. App. D.C. 142 (D.C. Cir. 1987)). In the instant case, Papadakis based his conclusions regarding Plaintiff's disability, in part, on the observed physical manifestations of Plaintiff's symptoms and, in part, on Plaintiff's self-reporting and descriptions of his own conditions. It would be impossible for a doctor to observe the contents of Plaintiff's dreams, the intensity of his hallucinations, or his flashbacks to the Vietnam War. Instead, Papadakis had to rely on these reports, most of which have been consistent throughout the time Plaintiff sought treatment from the VA.
>
> * * *
>
> [T]here is no indication in the record that Plaintiff's reports to Papadakis were inaccurate or embellished for purposes of procuring disability benefits from the VA. Additionally, Papadakis observed Plaintiff's physical symptoms, finding that he suffered from anxiety, agitation, and overwhelming emotion. ***Therefore, the ALJ's articulated reason for rejecting Papadakis' opinion is insufficient and not supported by the evidence in the record***.

*Keeton*, 583 Fed. App'x at 526-527 (emphasis added); *accord Mount v. Colvin*, 2015 U.S. Dist. LEXIS 15207 (W.D. Ky. Feb. 9, 2015) ("The Sixth Circuit has commented that rejecting a psychiatrist's opinion solely because it is based on self-reporting by a claimant would likely be inappropriate.")[5]

---

[5] It bears noting that in *Keeton*, the psychiatric opinion at issue did not come from a treating source, unlike in the case at bar. As the reasons for rejecting a treating source's opinion are subject to a heightened standard, the reasons given by the ALJ in the present action are subject to greater, not less, scrutiny.

13

Here too, Dr. Jacobs undoubtedly based her conclusions regarding Lockhart's functional limitations, in part, on Lockhart's self-reporting and descriptions of her own conditions. Nonetheless, they were also undoubtedly based, in part, on Dr. Jacobs' course of treatment and her own objective findings and observations. Dr. Jacobs's treatment notes consistently contain objective findings. Her mood was variably described as dysphoric with anxious affect, fair with appropriate affect, or variable with incongruent mood. (Tr, 289-91, 296-97, 300-302, 305-307, 342-44, 347-49, 351-53, 355-57.) She was consistently diagnosed with ADHD and major depressive disorder, varying up and down from moderate to severe. *Id*. Therefore, as in *Keeton*, the ALJ's sole, stated reason for rejecting Dr. Jacobs's opinion is insufficient, and does not constitute a good reason for rejecting a treating psychiatrist's opinion.

Furthermore, even if it was appropriate to reject a treating psychiatrist's opinion where it was based primarily on a claimant's incredible self-reports, the ALJ failed to offer any meaningful analysis of why she believed Lockhart was not credible in her description of her mental symptoms and limitations. An ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning." *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005). The regulations set forth seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the

14

individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4, Introduction. The ALJ did not discuss in any meaningful detail any of these factors in relation to Lockahrt's psychiatric-based limitations or how they impact Lockhart's credibility. As such, rejecting a treating psychiatrist's opinion for the stated reason that it is based on a claimant's own description of her symptoms, without actually discussing whether the claimant's description of her psychiatric-based symptoms is credible, fails to satisfy the treating physician rule.

As the Court finds a remand is necessary, in the interests of judicial economy, the Court declines to address Lockhart's remaining assignment of error, which argues that the ALJ failed to perform a proper credibility assessment as related to her pain related complaints.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: April 1, 2015